IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

MARION G. HICKS,

      Plaintiff,

v.                                    CASE NO. 2:10-cv-00531

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Plaintiff originally filed a brief in support of her claim, but later filed a Motion for Remand for Consideration of New and Material Evidence pursuant to sentence six of 42 U.S.C. § 405(g) after she was awarded benefits on a subsequent application effective the day after the ALJ's decision on the current application.  Plaintiff also filed a reply in support of the Motion for Remand.  The Commissioner filed a brief in support of judgment

on the pleadings, properly referred to as a brief in support of the complaint, as well as a response to Plaintiff's Motion for Remand.

Plaintiff, Marion Gale Hicks (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on January 10, 2008, alleging disability as of June 18, 2007, due to arthritis and high blood pressure. (Tr. at 113-19, 120-23, 151.) The claims were denied initially and upon reconsideration. (Tr. at 56-60, 61-65, 72-74, 75-77.) Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 79.) The hearing was held on November 6, 2008, before the Honorable John W. Rolph. (Tr. at 21-51.) By decision dated January 9, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-20.) The ALJ's decision became the final decision of the Commissioner on March 16, 2010, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) On April 20, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

On July 23, 2010, Claimant was awarded benefits on a subsequent application for DIB and SSI effective January 10, 2009, the day after the ALJ's decision on the current application. (ECF No. 16-2, pp. 6-11.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir.

1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2009).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v.

3

Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2009).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 13.)  Claimant was insured for purposes of her DIB application through December 31, 2009. (Tr. at 11.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of bilateral knee and left ankle pain due to degenerative changes/osteoarthritis, bilateral carpal tunnel syndrome and obesity. (Tr. at 13.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 15.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 15-16.)  As a

4

result, Claimant cannot return to her past relevant work.  (Tr. at 19.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as counter clerk, boat rental clerk and scaling machine operator, which exist in significant numbers in the national economy.  (Tr. at 20.)  On this basis, benefits were denied.  (Tr. at 20.)

Claimant's Background

     Claimant was fifty years old at the time of the administrative hearing.  (Tr. at 120.)  Claimant graduated from high school.  (Tr. at 30.)  In the past, she worked as a catcher on a dryer in a veneer plant and as a seamstress.  (Tr. at 30-31.)

The Medical Record on the Current Application

     The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it below.

     On July 5, 2007, Claimant underwent an exercise stress cardiolite test following complaints of chest pain and due to obesity.  The impression was that there was a focal abnormality involving the distribution of the LAD, suggesting a combination of old infarction and exercise-induced ischemia.  (Tr. at 252.)

     On July 18, 2007, Grant A. Parkins, M.D. completed a Physician's Summary on which he indicated he had last seen Claimant on June 20, 2007.  He diagnosed Claimant with chest pain, coronary artery disease and morbid obesity.  Her prognosis was fair to poor. He opined that she was disabled for more than a year.  (Tr. at

213.)

On July 25, 2007, Dr. Parkins completed a West Virginia Department of Health and Human Resources Medical Review Team, General Physical (Adults) on which he indicated that Claimant had high blood pressure, coronary artery disease and degenerative disc disease. (Tr. at 211.) Claimant weighed 300 pounds. (Tr. at 210.) He opined that Claimant was unable to work full time at her customary occupation or like work or other full time work. Claimant should avoid exertion or prolonged sitting or standing. (Tr. at 211.) He recommended that Claimant undergo cardiac catheterization. (Tr. at 212.)

On September 6, 2007, Claimant underwent left heart catheterization, which was normal. (Tr. at 234.) Claimant weighed 133 kilograms. (Tr. at 218.) Her discharge diagnoses included normal coronary arteries angiographically, normal left ventricular function with 55% ejection fraction with no evidence of infarction, noncardiac chest symptomology, hypertension, gastroesophageal reflux disease, arthritis bilaterally in the knees and morbid centripetal obesity. (Tr. at 216.)

On January 30, 2008, Claimant reported symptoms of left knee pain. X-rays showed minimal degenerative change in the medial tibial plateau on the right. (Tr. at 250.)

On March 4, 2008, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that

Claimant could perform light work, with occasional postural limitations (except an inability to climb ladders, ropes and scaffolds), and a need to avoid even moderate exposure to hazards and concentrated exposure to extreme cold, vibration, fumes, odors, dusts, gases and poor ventilation. (Tr. at 266-73.)

The record includes treatment notes from Dr. Parkins dated October 15, 2007, through March 4, 2008. (Tr. at 275-286.) On June 20, 2007, Claimant reported leg pain and chest pain. (Tr. at 282.) On September 14, 2007, Claimant presented for follow up of her cardiac symptoms and initial evaluation of edema in her right leg where the cardiac catheterization was done. Claimant weighed 296 pounds. (Tr. at 284.) Dr. Parkins' assessment was essential hypertension and edema. He recommended that she gradually return to normal activities and limit weight bearing to 5 pounds for 1 week, then gradually progress to full weight bearing. (Tr. at 284.) On October 15, 2007, Claimant presented for follow up evaluation of edema and hypertension. Claimant complained of dizziness and acid reflux. Claimant weighed 288 pounds. Her BMI was 48. Dr. Parkins assessed Claimant with essential hypertension, edema, allergic rhinitis, gastroesophageal reflux disease and eustachian tube dysfunction. (Tr. at 285.) On January 22, 2008, Claimant presented for follow up evaluation of her hypertension. Claimant also reported bilateral arm and knee pain following injuries to her knees. Claimant was 5 feet 5 inches tall and

weighed 289 pounds.  Her BMI was 48.  Dr. Parkins' impression was degenerative joint disease in multiple sights, as well as esophageal reflux and unspecified hypertension.  (Tr. at 279-80.) On March 20, 2008, Claimant complained of numbness and tingling in her right and left hand.  Claimant was 5 feet 5 inches tall and weighed 275 pounds.  Her BMI was 46.  (Tr. at 277.)  Dr. Parkins' impression was carpal tunnel syndrome. He ordered an EMG.  (Tr. at 278.)

On April 7, 2008, Claimant underwent EMG and nerve conduction studies and Darshan Dave, M.D. diagnosed severe right carpal tunnel syndrome with surgical treatment advised and moderate left carpal tunnel syndrome.  (Tr. at 287-90.)  Dr. Dave prescribed wrist splints.  (Tr. at 291.)

On June 24, 2008, Kip Beard, M.D. examined Claimant at the request of the State disability determination service.  Claimant was 5 feet 2 inches tall and weighed 277 pounds.  (Tr. at 299.) Dr. Beard's impression was osteoarthritis, hypertension, cardiomegaly, according to history, carpal tunnel syndrome, chest pain, atypical for angina and cardiac palpitations.  (Tr. at 297-301.)  Dr. Beard wrote that Claimant

> is a 50-year-old female with a history of bilateral knee and left ankle pain.  Examination today revealed some joint crepitus with pain, tenderness, and motion loss. X-ray on the chart shows arthritic findings of the medial compartment of the right knee with no significant degenerative changes on the left.
>
> In terms of carpal tunnel, there was no obvious intrinsic

8

> hand atrophy. Manipulation was preserved. There was no reported sensory loss. Grip strength was mildly diminished bilaterally. In terms of the hypertension and cardiomegaly as reported by the claimant, I did not have records on that. Heart examination today is unremarkable with regular rate and rhythm without appreciable murmurs, gallops, or rubs. The claimant does complain of chest pain; her description is atypical of that of angina. She also complains of cardiac palpitations, but her heart was regular rate and rhythm when I examined her today, and I did not appreciate any ectopy. There was also no heart failure on examination.

(Tr. at 302.)

On July 14, 2008, a State agency medical source, Cindy Osbourne, D.O., completed a Physical Residual Functional Capacity Assessment on which she opined that Claimant could perform light work, reduced by occasional postural limitations (except an inability to climb ladders, ropes and scaffolds) and a need to avoid all exposure to hazards and concentrated exposure to extreme cold and vibration. (Tr. at 309-16.) She wrote that the

> claimant reports that she has difficulty walking due to her knee pain. She also cannot do mowing or weedeating due to the numbness and aching in her hands. She has difficulty with putting on her socks, pants, shoes, and zipping zippers all due to her knee pain and numbness in her hands. She can lift 15-20 lbs and walk about 1/10 of a mile. The medical evidence supports her allegations and her reported functional limitations. She is found to be credible. Her gait was slightly limping but she is able to walk o[n] heels/toes/tandem and able to squat halfway. She is morbidly obese and considering this with limping gait, decrease residual functional capacity to light with walk/stand limits as indicated.

(Tr. at 314.)

On April 1, 2008, Clifford W. Roberson, M.D. examined Claimant related to her bilateral knee pain. Dr. Roberson diagnosed

degenerative arthritis of both knees and obesity.  He recommended conservative treatment.  He administered injections and referred Claimant for physical therapy.  (Tr. at 319.)

The record includes additional treatment notes from Dr. Parkins.  On September 2, 2008, Claimant presented for follow up evaluation of hypertension.  Claimant complained of feeling tired all the time.  Claimant was 5 feet 5 inches tall and weighed 275 pounds.  Her BMI was 46.  Dr. Parkins diagnosed fatigue and malaise.  (Tr. at 324.)  On October 2, 2008, Claimant presented for follow up of hypertension and for evaluation of arthritis. Claimant weighed 276 pounds and her BMI was 46.  (Tr. at 322.) Claimant's prior diagnoses included osteoarthrosis, generalized involving multiple sights and essential hypertension.  (Tr. at 323.)

Motion for Remand

Claimant has moved this court, pursuant to the sixth sentence of 42 U.S.C. § 405(g), to remand her claim to the administrative level for consideration of new evidence.

In considering Claimant's motion for remand, the court notes initially that the social security regulations allow two types of remand.  Under the fourth sentence of 42 U.S.C. § 405(g), the court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence.  42 U.S.C. § 405(g);

10

Melkonyan v. Sullivan, 501 U.S. 89, 97 (1991).  Where there is new medical evidence, the court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence.  42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 97. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute.  Melkonyan, 501 U.S. at 98.

In order to justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).[1]  In Borders, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four

---

[1] Within relevant case law, there is some disagreement as to whether 42 U.S.C. § 405(g) or the opinion in Borders provides the proper test in this circuit for remand of cases involving new evidence. Although the Commissioner argues that good cause is not required (ECF No. 17, p. 4), this court will apply the standard set forth in Borders in accordance with the reasoning previously expressed in this district:

> The court in Wilkins v. Secretary of Dep't of Health & Human Servs., 925 F.2d 769 (4th Cir. 1991), suggested that the more stringent Borders four-part inquiry is superseded by the standard in 42 U.S.C. 405(g).  The standard in § 405(g) allows for remand where "there is new evidence which is material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  However, Borders has not been expressly overruled.  Further, the Supreme Court of the United States has not suggested that Borders' construction of § 405(g) is incorrect.  Given the uncertainty as to the contours of the applicable test, the Court will apply the more stringent Borders inquiry.

Brock v. Secretary, Health and Human Servs., 807 F. Supp. 1248, 1250 n.3 (S.D. W. Va. 1992) (citations omitted).

prerequisites are met:   (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence.   Id.

In support of her Motion, Claimant provides a favorable decision on a subsequent application in which she was awarded benefits on July 23, 2010, with an amended disability onset of January 10, 2009, the day after the ALJ's decision on the current application before the court.   Claimant relies on Bradley v. Barnhart, 463 F. Supp.2d 577, 580-81 (S.D. W. Va. 2006), wherein the court found "that an award of disability benefits based on an onset date coming in immediate proximity to an earlier denial of benefits is worthy of further administrative scrutiny to determine whether the favorable event should alter the initial, negative outcome on the claim." (ECF No. 16, p. 2.) Claimant notes that as in Bradley, there is a "tight timeline" between the unfavorable decision currently before the court and the subsequent decision. She argues that it "provides reasonable cause to believe that the new and material evidence relates to the period on or before the

date of the [ALJ's] denial of benefits." (ECF No. 16, p. 2.) In addition, she points out that the ALJ in the subsequent decision relied in part on medical evidence which was available to the current ALJ, including the report from Dr. Beard dated June 24, 2008, to conclude that Claimant was limited to sedentary work and, therefore, met the Medical-Vocational Guidelines. (ECF No. 16, pp. 2-3.) Claimant further argues that she has met the good cause requirement because the decision was issued on July 23, 2010, more than four months after the Appeals Council completed its consideration of Claimant's current claim before the court. (ECF No. 16, p. 3.)

In response, the Commissioner asserts that the court in Meadows v. Astrue, No. 5:08-cv-01129, 2010 WL 1380117, at *3 (S.D. W. Va. Mar. 31, 2010) (Berger, D.J.), rejected Bradley and Reichard v. Barnhart, 285 F. Supp.2d 728, 734 (S.D. W. Va. 2003), and that in fact, Bradley and Reichard are factually distinguishable from the instant matter. The Commissioner points out that the courts in Allen v. Commissioner of Soc. Sec. 561 F.3d 646, 654 (6th Cir. 2009) and Winston ex rel. D.F. v. Astrue, 341 Fed. App'x 995, 998 (5th Cir. 2009), have rejected the notion that a favorable subsequent application is itself new evidence meriting remand and has no bearing on whether the prior application was meritorious. (ECF No. 17, pp. 1-3.) The Commissioner notes that in Albright v. Commissioner of Soc. Sec., 174 F.3d 473, 476 (4th Cir. 1999), the

United States Court of Appeals for the Fourth Circuit specifically approved the Agency's treatment of subsequent applications as separate claims. (ECF No. 17, p. 3.) The Commissioner argues that subsequent adjudication of Claimant's 2009 claims cannot relate back to Claimant's prior 2007 claims. That ALJ Erwin, in July 2010, found Claimant disabled as of January 10, 2009, one day after ALJ Rolph's January 9, 2009 decision, cannot be deemed new and material evidence relating to the period on or before the date of ALJ Rolph's prior, January 9, 2009, hearing decision. (ECF No. 17, pp. 5-6.) Finally, the Commissioner cites to Acquiescence Ruling ("AR") 00-1(4) and argues that when ALJ Erwin adjudicated the period subsequent to January 9, 2009, the prior findings made by ALJ Rolph were not evidence in determining disability with respect to the unadjudicated period. Plaintiff's contrary argument misconstrues <u>Albright</u> and this agency's policy, because it wrongly concludes that ALJ Erwin's subsequent findings should be considered evidence in determining disability with respect to a previously adjudicated period. (ECF No. 17, pp. 6-7.)

The undersigned proposes that the presiding District Judge find the reasoning of <u>Reichard</u> and <u>Bradley</u>, compelling and of good precedential value.

In <u>Reichard</u>, the court observed that a subsequent decision, in which the same ALJ found that claimant was disabled less than a week after his first decision in which he had denied benefits,

is new and material evidence. [The ALJ] reached his
decision in the adjudication of Claimant's second
applications. His finding that Claimant was disabled
only a few days after his first decision was issued begs
the question whether Claimant was actually disabled
before that during the period of time relevant to
consideration of Claimant's first application. A review
of [the ALJ's] second decision shows that some of the
evidence he considered was in the record before him on
the first applications and/or before the Appeals
Council. Simply in consideration of the finding that
Claimant became disabled a few days after [the ALJ]
issued his first decision, the undersigned finds that
there is a reasonable possibility that the evidence
considered by [the ALJ] in reaching his second decision
might well have changed the outcome in this case as it
was before him the first time. It is not in any way
evident from the current record in this case how
Claimant became disabled less than a week after [the
ALJ's] first decision.

Reichard, 285 F. Supp.2d at 734.

Similarly, in Bradley, the claimant was granted benefits on a

subsequent application effective just one day after the previous

decision dated April 26, 2005.  The subsequent decision occurred at

an early point in the administrative process, without plaintiff

having any need to resort to an additional inquiry by an ALJ.  On

the subsequent application, the ALJ relied on evidence received in

June of 2005.  Although the court in Bradley found Reichard

distinguishable in some respects, the court ultimately acknowledged

that

     [t]he differences between this action and Reichard thus
     do not warrant disregard of that decision here.  At
     bottom, Reichard stands for the proposition that an award
     based on an onset date coming in immediate proximity to
     an earlier denial of benefits is worthy of further
     administrative scrutiny to determine whether the
     favorable event should alter the initial, negative

outcome on the claim.

Bradley, 463 F. Supp.2d at 580-81.

Notably, the court in Bradley reasoned that

[n]ew evidence is that which is neither duplicative nor cumulative. Material evidence is that which has the reasonable possibility of changing the outcome. Both of those requirements are satisfied here. If the SSA awarded benefits on the second claim based upon the evidence received in June 2005, with an onset date coming just one day after the date of an earlier denial, that documentation, and the decision which resulted from it, would seem likely to be of a significant and substantial character in relation to the earlier claim. The first and second Wilkins requirements are thus satisfied.

The tight time line here also provides reasonable cause to believe the new and material evidence relates to the period on or before the date of the ALJ's denial of benefits. It is important to note in this regard that the evidence need not have *existed* on or before the date of the decision. It need only *relate* to that period. Here, the medical evidence was received by the Commissioner in June 2005. It obviously existed prior to the time it was received, putting it in close temporal proximity to the April 26, 2005, unfavorable decision by the ALJ. In view of both Reichard and plaintiff's satisfaction of the tripartite Wilkins standard, the magistrate judge's new-evidence remand recommendation is appropriate.

Id. at 581.

The Commissioner asserts that more recently, the court in Meadows "rejected" Bradley and Reichard. (ECF No. 17, p. 1.) The undersigned proposes that the presiding District Judge find otherwise. The court in Meadows did not reject Bradley and Reichard, it only found them inapplicable to the circumstances of

that case.[2]  Meadows, 2010 WL 1380117, at *4 n.5.  In particular,
unlike Bradley and Reichard, in Meadows, the Appeals Council had
considered the fact that since the date of the ALJ's decision, the
claimant was awarded benefits on a subsequent application effective
the day after the ALJ's decision on the application at issue.
Meadows, 2010 WL 1380117, at *3.  In neither Bradley nor Reichard,
nor the instant case for that matter, did the Appeals Council have
the opportunity to consider the ALJ's decision on the subsequent
application.

    The Commissioner urges the court to consider and adopt the
reasoning of Allen (which rejected Reichard and Bradley) and
Winston.  The court has considered those cases and proposes that
the presiding District Judge decline to do so.  Our Court of
Appeals has not spoken on this issue and until it does so, the
court should adhere to the holdings set forth in Reichard and
Bradley.

    Next, Claimant argues that the Commissioner's regulations
"require that evidence in support of a disability claim 'relate to'
the claim under consideration.  20 C.F.R. §§ 404.1520(b),
416.920(b).  Here, the subsequent adjudication of Plaintiff's 2009
claims cannot relate back to Plaintiff's prior 2007 claims."  (ECF
No. 17, p. 5.)  The Commissioner goes on to argue that

---

    [2]  Meadows remains pending in this court.  Upon denial of the
plaintiff's motion to remand, the court is now conducting a substantive
review.  See Meadows v. Astrue, 5:08-cv-1129.

[t]he time periods considered in the 2009 and 2010 decisions reflect the regulatory definition of the "effective filing period" of a DIB or SSI application. 20 C.F.R. §§ 404.620(a), 416.330.  To wit, Plaintiff's December 2007 applications remained in effect until January 9, 2009, the date of ALJ Rolph's decision.  The time period after that date was an unadjudicated period, addressed by Plaintiff's March 2009 applications and ALJ Erwin's July 2010 decision.  As stated in the Commissioner's Acquiescence Ruling (AR) 00-1(4) (interpreting <u>Albright</u>):

> when adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues de novo in determining disability with respect to the unadjudicated period. SSA does not consider prior findings made in the final determination or decision on the prior claim as evidence in determining disability with respect to the unadjudicated period involved in the subsequent claim.

AR 00-1(4), 2000 WL 43774, at *4 (Jan. 12, 2000).

Under the Commissioner's policy, when ALJ Erwin adjudicated the period subsequent to January 9, 2009, the prior findings made by ALJ Rolph were not "evidence in determining disability with respect to the unadjudicated period."  Plaintiff's contrary argument misconstrues the <u>Albright</u> decision and this agency's policy, because it wrongly concludes that ALJ Erwin's subsequent findings should be considered "evidence" in determining disability with respect to a previously adjudicated period.

(ECF No. 17, pp. 6-7) (footnote omitted).

The Commissioner cites to that portion of AR 00-1(4) that describes the Social Security Administration's interpretation of the regulations *outside* of the Fourth Circuit.  In the Fourth Circuit, the Commissioner's approach to this issue is different in light of <u>Lively v. Secretary of Health and Human Servs.</u>, 820 F.2d 1391 (4th Cir. 1987) and <u>Albright v. Commissioner of Soc. Sec.</u>

Admin., 174 F.3d 473 (4th Cir. 1999).   In AR 00-1(4), which
interpreted Albright, the Commissioner explained that under
existing policy: "SSA does not consider prior findings made in the
final determination or decision on the prior claim as evidence in
determining disability with respect to the unadjudicated period
involved in the subsequent claim."   AR 00-1(4), 2000 WL 43774, at
*3 (Jan. 12, 2000).   In comparison, the Commissioner explained how
it would apply Albright in the Fourth Circuit:

> When adjudicating a subsequent disability claim arising
> under the same or a different title of the Act as the
> prior claim, *an adjudicator determining whether a*
> *claimant is disabled during a previously unadjudicated*
> *period must consider such a prior finding as evidence and*
> *give it appropriate weight in light of all relevant facts*
> *and circumstances.*  In determining the weight to be given
> such a prior finding, an adjudicator will consider such
> factors as: (1) whether the fact on which the prior
> finding was based is subject to change with the passage
> of time, such as a fact relating to the severity of a
> claimant's medical condition; (2) the likelihood of such
> a change, considering the length of time that has elapsed
> between the period previously adjudicated and the period
> being adjudicated in the subsequent claim; and (3) the
> extent that evidence not considered in the final decision
> on the prior claim provides a basis for making a
> different finding with respect to the period being
> adjudicated in the subsequent claim.
>
> Where the prior finding was about a fact which is
> subject to change with the passage of time, such as a
> claimant's residual functional capacity, or that a
> claimant does or does not have an impairment(s) which is
> severe, the likelihood that such fact has changed
> generally increases as the interval of time between the
> previously adjudicated period and the period being
> adjudicated increases. An adjudicator should give greater
> weight to such a prior finding when the previously
> adjudicated period is close in time to the period being
> adjudicated in the subsequent claim, e.g., a few weeks as
> in Lively. An adjudicator generally should give less

19

weight to such a prior finding as the proximity of the
period previously adjudicated to the period being
adjudicated in the subsequent claim becomes more remote,
e.g., where the relevant time period exceeds three years
as in Albright. In determining the weight to be given
such a prior finding, an adjudicator must consider all
relevant facts and circumstances on a case-by-case basis.

Id., 2000 WL 43774, at *4 (emphasis added).

Thus, contrary to the Commissioner's statement above, in the

Fourth Circuit and pursuant to AR 00-1(4), the Social Security

Administration **does** consider prior findings made in the final

determination or decision on the prior claim as evidence in

determining disability with respect to the unadjudicated period

involved in the subsequent claim.

In Reichard, the court made the following astute observation

regarding Lively and Albright:

[i]n consideration of the authorities addressed by the
Court and cited by parties in other such cases for and
against remand, the Court also finds that this case is
clearly factually and procedurally quite different from
Lively and Albright. In this case, the ALJ's decision was
favorable upon Claimant's second applications, not the
first as in Lively. ALJ Conover's decision upon the
Claimant's second applications is final in this case
whereas in Lively the later decision was not. ALJ
Conover's first decision upon Claimant's first
application is obviously still subject to review and
therefore not final. This case is therefore the
photographic negative of Lively. Thus, the undersigned
finds that Lively and Albright are plainly
distinguishable.

This notwithstanding, the undersigned finds the logic of
Lively as it was explained by the Court in Albright
generally compelling. Final decisions of Administrative
Law Judges based upon substantial evidence must receive
full consideration and be assigned weight as may be
appropriate in view of the circumstances under which they

are issued. Thus, <u>res</u> <u>judicata</u> applies to findings and decisions on the merits which become final as a consequence of a claimant's exhaustion of or failure to pursue administrative or judicial review after notice of an adverse decision. <u>Grose v. Cohen</u>, 406 F.2d 823, 824 (4th Cir.1969)(Referring to the Social Security Act and Regulations, the Court stated that "[o]rdinarily an administrative decision becomes final unless a civil action is filed in district court within 60 days.")  In <u>Lively</u>, for example, the finding in the first and final decision of the ALJ that Mr. Lively was capable of sedentary work took precedence. In this case, ALJ Conover's unfavorable decision upon Claimant's first applications cannot because it is still under review. The favorable second decision of ALJ Conover upon Claimant's second applications does have precedential value, however, but only by its terms beginning March 1, 2001, less than one week after he issued his decision upon Claimant's first application.

<u>Reichard</u>, 285 F. Supp.2d at 735.

<u>Lively</u> and <u>Albright</u> and their interpretation in AR 00-1(4) are unique to the Fourth Circuit.  As in <u>Reichard</u>, the facts of this case are the "photographic negative" of <u>Lively</u>.  The subsequent decision in this case is final and not before this court for review.  <u>Lively</u> and <u>Albright</u> are helpful only as expressed in <u>Reichard</u>.

Finally, the Commissioner's arguments about effective filing periods simply ignore Claimant's right to present new and material evidence pursuant to <u>Borders</u> and 42 U.S.C. § 405(g).  Likewise, while the regulations require that evidence in support of a disability claim "relate to the claim under consideration, 20 C.F.R. §§ 404.1520(b), 416.920(b)," the "evidence need not have *existed* on or before the date of the decision. It need only *relate*

to that period." <u>Bradley</u>, 463 F. Supp.2d at 581.

Turning to consideration of Plaintiff's Motion, the court proposes that the presiding District Judge find that Claimant has made a general showing of the new evidence, as she provided the decision.  In addition, she has shown good cause for not providing it earlier, in light of the fact the decision was first made on July 23, 2010, after the decision of the Appeals Council on March 16, 2010.

The court further proposes that the presiding District Judge find that the evidence is relevant and material.  In the subsequent ALJ's decision dated July 23, 2010, ALJ Erwin found Claimant disabled as of January 10, 2009,[3] one day after ALJ Rolph's decision on the current application.  As in <u>Reichard</u>, it is not "in any way evident from the current record in this case how Claimant became disabled" one day after ALJ Rolph's decision on January 9, 2009.

Notably, ALJ Erwin cites evidence from Dr. Beard from June of 2008 (which evidence was before ALJ Rolph), as well as new evidence from Claimant's treating physician, Dr. Parkins.  In particular, on March 2, 2009, less than two months after ALJ Rolph's decision, Dr. Parkins saw Claimant in follow up for back pain and Claimant underwent lumbar spine x-rays on this same date which showed

---

[3]  In the subsequent application, Claimant amended her onset date to this date.  (ECF No. 16-2, p. 6.)

multifocal hypertrophic spurring. She weighed 285 pounds and had a BMI of 47. On October 23, 2009, Dr. Parkins noted that Claimant had chronic bilateral knee pain. Finally on March 3, 2010, Claimant weighed 294 pounds with a BMI of 49. Dr. Parkins indicated that Claimant would have great difficulty performing work that was not sedentary. ALJ Erwin afforded great weight to the opinion of Dr. Parkins and found Claimant capable of sedentary work. (ECF No. 16-2, p. 8-9.) As an individual closely approaching advanced age on her disability onset date, Claimant met the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.14. (ECF No. 16-2, p. 10.)

As in Bradley, "[t]he tight time line here ... provides reasonable cause to believe the new evidence relates to the period on or before the date of the ALJ's denial of benefits." Bradley, 463 F. Supp.2d at 581. Indeed, there was compelling evidence dated March 2, 2009, the x-ray report of Claimant's lumbar spine showing multifocal hypertrophic spurring, dated "in close temporal proximity" to the January 9, 2009, decision. Bradley, 463 F. Supp.2d at 581. Furthermore, ALJ Erwin considered evidence from the previous application, namely that from Dr. Beard.

If Claimant had been found disabled as of Dr. Parkins' March 3, 2010, opinion, Claimant's case for remand based on new evidence would be more difficult to make. As the court in Reichard observed,

23

> [t]he undersigned recognizes that by virtue of occurrences such as accidents or the onset of further severe medical and/or psychological conditions after ALJ decisions upon claimants' first applications, subsequent applications will quite naturally result in disability onset dates sometime thereafter as well.

Reichard, 285 F. Supp.2d at 736 n.9.

Such is not the case in the instant matter. Instead, in this case, ALJ Erwin found Claimant disabled using some of the same evidence considered by ALJ Rolph. Moreover, in March of 2009, less than two months after ALJ Rolph's decision on the current application, Claimant underwent x-rays showing multifocal hypertrophic spurring, a nonspontaneous condition that certainly could relate back to the time before ALJ Rolph's decision. The subsequent decision by ALJ Erwin finding that Claimant meets the Medical-Vocational Guidelines because she is capable of only sedentary work just one day after ALJ Rolph's decision denying benefits, coupled with the evidence considered in the subsequent decision, has a reasonable possibility of changing the ALJ's decision on the current application, particularly in a case such as this one where Claimant can do less than a full range of light work and meets the Medical-Vocational Guidelines on the current application if she is found capable of sedentary work.

Based on the above, the court proposes that the presiding District Judge remand this matter for further administrative proceedings pursuant to Borders and sentence six of 42 U.S.C. § 405(g). The court further proposes that the presiding District

Judge need not make a substantial evidence determination on Claimant's current decision in light of the recommendation of remand pursuant to sentence six of 42 U.S.C. § 405(g).

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge, GRANT Plaintiff's Motion for Remand, REVERSE the final decision of the Commissioner, and REMAND this case for further proceedings pursuant to the sixth sentence of 42 U.S.C. § 405(g) and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder

25

v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn,
474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th
Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.
1984).  Copies of such objections shall be served on opposing
parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and
Recommendation and to transmit a copy of the same to counsel of
record.

June 29, 2011
Date

Mary E. Stanley
United States Magistrate Judge

26